UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|  |  |
|---|---|
| ) | MDL No. 1877 |
| ) | |
| ) | |
| IN RE CLASSICSTAR MARE LEASE ) | Master File: |
| LITIGATION )Civil Action No. 5:07-cv-353-JMH | |
| ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a Motion for a Protective
Order filed by GeoStar Corporation (hereinafter, "GeoStar")
[Lexington Civil Action No. 07-353-JMH, Record No. 642], requesting
relief from the Court's November 14, 2008, Order [*see, e.g.,*
Lexington Civil Action No. 07-353-JMH, Record No. 628] requiring
GeoStar to produce requested financial data in its native format.[1]
Plaintiffs West Hills Farms, LLC, Arbor Farms, LLC, Nelson
Breeders, LLC, MacDonald Stables, LLC, and Jaswinder and Monica
Grover (hereinafter, "West Hills Plaintiffs") have responded,
stating their objections to the motion [Lexington Civil Action No.
07-353-JMH, Record No. 671; No. 06-243-JMH, Record No. 281].
Plaintiffs J&L Canterbury Farms, LLC, and Leo and Jean Hertzog,

---

[1]GeoStar's Motion is also docketed at Lexington Civil Action
Nos. 06-243-JMH [Record No. 276]; 07-347-JMH [Record No. 95]; 07-
348-JMH [Record No. 127]; 07-349-JMH [Record No. 113]; 07-351-JMH
[Record No. 46]; 07-352-JMH [Record No. 57]; 07-419-JMH [Record No.
90]; 08-17-JMH [Record No. 25]; 08-53-JMH [Record No. 115]; 08-74-
JMH [Record No. 18];  08-79-JMH [Record No. 13]; 08-104-JMH [Record
No. 19]; 08-109-JMH [Record No. 91]; 08-321-JMH [Record No. 39];
08-418 [Record No. 12].

have joined in that response, stating their objections to GeoStar's motion [Lexington Civil Action No. 07-353-JMH, Record No. 682; No. 07-349-JMH, Record No. 115]. Finally, GeoStar has filed a Reply in Further Support of its Motion for Protective Order [Lexington Civil Action No. 07-353-JMH, Record No. 686; No. 06-243-JMH, Record No. 283; No. 07-349-JMH, Record No. 117]. For the reasons which follow, GeoStar's Motion shall be denied.

During the spring of 2007, the West Hills Plaintiffs propounded a series of document requests to GeoStar. Request No. 9 sought GeoStar's "financial statements, whether accountant or internally prepared, all other financial information, all general ledgers, all accounting journal entries (such as cash receipts, cash disbursements, etc.) and the source documents evidencing those entries pertaining to the financial condition of GeoStar from 2001 to the present." With regard to the format of the requested production, the West Hills Plaintiffs requested the production of responsive documents "as they are kept in the usual course of business or [as] organized and labeled to correspond with the paragraphs and subparagraphs set forth below."

GeoStar responded, objecting to the requests, as follows:

> GeoStar objects to Plaintiffs' proposed form for producing electronically stored information. GeoStar further objects to Plaintiffs' definition and instructions related to "computer file" as set forth in Definitions and Instructions paragraph 13(f). GeoStar further objects on the grounds that requests for "computer files," as defined in

paragraph 13(f), are unduly burdensome and cost prohibitive. GeoStar specifically objects to this definition as exceeding the scope of Federal Rule of Civil Procedure 34. GeoStar supports the proposal of Defendant David Plummer that the parties agree on an appropriate protocol for the production of responsive electronically stored information pursuant to Federal Rule of Civil Procedure 34, as amended and now in effect.

Ultimately, this Court entered Orders requiring an extensive production of financial information from GeoStar and its many subsidiaries. [*See*, *e.g.*, Lexington Civil Action No. 07-243-JMH, Record Nos. 494 and 504.] The Orders did not specify the format for electronic production of these documents. On September 11, 2008, GeoStar produced 273,000 pages of these records to all parties in the MDL. The documents were initially produced in .pdf and Excel format. GeoStar then converted the documents to .tif documents with .dii load files and OCR so that the documents could be readily loaded into the parties' Summation or Concordance (both litigation document management software) databases for ease of searching.[2] GeoStar then produced the documents with these

_____

[2] Geostar states that this is the same format in which all prior productions had been made. In fact, the Court understands that Geostar had advised all other counsel shortly after consolidation of these matters into the present litigation that it would produce documents in .tif format with load files for either Concordance or Summation discovery management databases, as preferred by the parties.

"[.tif] is a static image format similar to a PDF that creates a mirror image of the electronic document." *Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 2008 WL 5062700, *2 (S.D.N.Y. 2008). "Native format is the 'default

3

modifications.

On October 2, 2008, the West Hills Plaintiffs sought a telephonic conference with the undersigned which resulted in an order to produce the documents in their native format. The undersigned also directed, however, that West Hills should depose a GeoStar representative to determine the impact that production of that information in native format would have upon the operations of GeoStar, inviting GeoStar to file a Motion for a Protective Order if necessary following the gathering of that information.

On October 17, 2008, GeoStar's Chief Financial Officer, Fred Lambert, appeared and discussed the impact that a native format production would have on GeoStar. He identified three reasons that the production of the financial information would be extremely difficult and burdensome on GeoStar: (1) GeoStar would have to redact all financial information pertaining to Gastar Exploration, Inc., pursuant to a confidentiality agreement between those companies; (2) GeoStar would have to redact information outside the requested time period; and (3) GeoStar would have to review

_____

format of a file,' access to which is 'typically provided through the software program on which it was created.'" *Id.* at *2, n. 4. "OCR" stands for "optical character recognition." Merriam-Webster's On-Line Dictionary, http://www.merriam-webster.com/dictionary/OCR (last visited February 2, 2009). As the Court understands OCR, it is a process whereby one creates an electronic translation of static images, described above as .pdf and .tif files, into text that may be searched or, in some instances, edited using a computer and appropriate software.

older data and repair any corrupted data.

Fed. R. Civ. P. 34 provides that, if the requesting party fails to specify a format, "a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). Under Fed. R. Civ. P. 34(b)(2)(E)(iii), "a party need not produce the same electronically stored information in more than one form."

The 2006 Advisory Committee Notes to Rule 34 provide the following guidance:

> The rule does not require a party to produce electronically stored information in the form in which it is ordinarily maintained, as long as it is produced in a reasonably usable form . . . If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

Further, the Manual for Complex Litigation, § 11.446, provides that:

> Against the backdrop of heightened demands for usability and searchability of the electronic discovery produced in a multi-district case, is the need for the parties to confer on the format of the production, keeping in mind that the responding party is best situated to evaluate the procedures, and the need to produce the information in a reasonably usable form to enable the receiving party to access, search, and display the information.

*In re Seroquel Prod. Liability Litig.*, 244 F.R.D. 650, 655 (M.D. Fla. 2007) (citing Manual for Complex Litigation, § 11.446 (4th

ed.)).

GeoStar takes the position that GeoStar's original production, thus, met and satisfied the requirements of Fed. R. Civ. P. 34(b)(2)(E).   *See Autotech Tech. Ltd. Partnership v. Automtaiondirect.com, Inc.*, 248 F.R.D. 556, 559-60 (N.D. Ill. 2008) (where a party does not specify a format in which the documents are to be produced, production of documents in .pdf and .tif format "complied with the ordinary meaning of Rule 34").   GeoStar argues that it had the option to produce the documents in their native format or in an alternative format that was "reasonably usable" and that did not "significantly degrade" the searchability function of the documents.   *See United States v. O'Keefe*, 537 F.Supp.2d 14, 23 (D.D.C. 2008) ("production of the electronically stored information in PDF or TIFF format would suffice, unless defendants can show that those formats are not 'reasonably usable' and that the native format, with the accompanying metadata, meet the criteria of 'reasonably usable' whereas the PDF or TIFF formats do not").

Plaintiffs do not directly address the issue of whether the data, as already produced is "reasonably usable," arguing instead that the production of data in its native format would save them "hundreds of hours."   The West Hills Plaintiffs argue that "[i]n cases where the financial data is voluminous, [the] reporting feature is essential to the discovering party's ability to sort through the data."   [Response at 5.]   In other words, the West

Hills Plaintiffs are not arguing that the data produced is not usable, only that it could be so much more useable in its native format.

The West Hills Plaintiffs have cited as an example a 509 page .tif image produced by GeoStar for one month, December 2002, of general ledger financial information for a GeoStar subsidiary out of which GeoStar marketed its oil and gas working interests to ClassicStar participants. The report contains 18,000 rows and thirteen columns of data, and there are some ninety separate monthly general ledgers in this format for the referenced subsidiary alone. In other words, these materials contain an extraordinary amount of data. Plaintiffs explain that, in order to trace the $140 million of ClassicStar funds that it alleges were distributed through GeoStar to the ultimate recipients, they will be forced "to manually sort through tens of millions of rows of densely formatted financial data." [*Id.*] By contrast, if the data is produced in native format, the method in which it is maintained in the ordinary course of GeoStar's business, "Plaintiffs could query various search reports and extract the desired information in a fraction of the time." [*Id.*]

The question before the Court, then, is whether GeoStar's original production was "reasonably usable" under Fed. R. Civ. P. 34(b)(2)(E). If the production made was "reasonably usable" and the non-native format did not "significantly degrade" the

searchability of the documents, Geostar argues that it should not be required to make a second production and that the burden is on the West Hills Plaintiffs to provide proof that the production does not meet these requirements. *See*, *e.g.*, *Perfect Barrier LLC v. Woodsmart Solution, Inc.*, No. 3:07-cv-103-JVB, 2008 WL 2230192, *3 (N.D. Ind. May 27, 2008).

To answer this question, the Court must consider whether by producing the financial data which resides in the OGSYS, Creative Solutions, and Checkbook Solutions accounting software solutions without its embedded metadata, GeoStar has run afoul of its obligations under Fed. R. Civ. P. 34. The Court concludes that, in light of the Court's prior Orders and the phrasing of the specific requests for this data, that GeoStar has not necessarily erred by producing the documents in .pdf and .tif formats. Indeed, GeoStar apparently produced the documents in a format which was most likely to be usable – to some extent – by any of the parties to this lawsuit, none of whom had the necessary software for the native format data at the time of the production. In other words, the West Hills Plaintiffs have received, to the best of the Court's knowledge, the production that their Request sought.

Nonetheless, the Court is very concerned by a July 25, 2008, exchange between counsel for the West Hills Plaintiffs and counsel for GeoStar Corporation, which reads as follows:

> This letter responds to your prior letter and
> emails regarding documents produced by GeoStar

> Corporation.  You asked that we produce the
> financial and accounting records in their
> native format.  I do not know, however,
> whether you have the software to be used in
> connection with that information.  GeoStar
> runs two software packages for its financial
> records: (1) Creative Solutions; and (2) Oil
> & Gas Information Systems.  It is my
> understanding that the later program may cost
> in excess of $15,000.  Although we could
> provide you with the data housed in these
> programs, it would be useless without the
> software in which to import that data.  We
> will provide you with the financial records in
> a format that will allow you to upload them
> into your Summation or Concordance database,
> and we can provide you with the data in its
> native format if you choose to buy the
> software.

Whatever the wording of the Request and Geostar's obligations under the relevant Rules of Civil Procedure, it is quite clear that GeoStar agreed to produce the material in its native format to the West Hills Plaintiffs and that GeoStar understood that the West Hills Plaintiffs considered the data "degraded" without the metadata intact.  Indeed, the West Hills Plaintiffs have apparently concluded that it is worth the cost of obtaining the specific software necessary to read the native format data so that they might use its embedded metadata to better understand the data and the information that it represents.[3]

---

[3]  Embedded metadata consists of:

> . . . text, numbers, content, data, or other
> information that is directly or indirectly
> inputted into a [n]ative [f]ile by a user and
> which is not typically visible to the user
> viewing the output display" of the native

Having considered the facts and arguments presented and the relevant law, the Court shall order GeoStar to produce the data in its native format – effectively holding the parties to the agreement that they reached between themselves during the summer of 2008 – notwithstanding the fact that the West Hills Plaintiffs' request may not have effectively addressed this issue on its own.

Further, there will be no need for GeoStar to redact the financial information pertaining to Gastar Exploration, Inc., notwithstanding a confidentiality agreement between those companies, because GeoStar has been ordered on this and several prior occasions to produce that data. Indeed, as far as the Court can tell, this data should have already been produced in some format.

As for GeoStar's concerns about its ability to retrieve certain older data and repairing any corrupted data, the Court notes that GeoStar was apparently able to retrieve that data for

---

file. Examples include spreadsheet formulas, hidden columns, externally or internally linked files (such as sound files), hyperlinks, references and fields, and database information. This type of metadata is often crucial to understanding an electronic document. For instance, a complicated spreadsheet may be difficult to comprehend without the ability to view the formulas underlying the output in each cell.

*Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 2008 WL 5062700, *4 (S.D.N.Y. 2008) (internal citations omitted).

its initial .pdf or .tif production.  In other words, the Court finds this objection to be incredible.  Should there be any problem retrieving the data or should any corrupt data be found, the parties and the Court will cross that bridge when they get to it.

Finally, as GeoStar has already produced the data once and as the original document request did not specify a native format production, it is only fair to shift the reasonable cost of copying and delivering this second production to the West Hills Plaintiffs.

Accordingly, **IT IS ORDERED**

(1)  that the Motion for a Protective Order filed by GeoStar Corporation (hereinafter, "GeoStar") [Lexington Civil Action No. 07-353-JMH, Record No. 642; 06-243-JMH [Record No. 276]; 07-347-JMH [Record No. 95]; 07-348-JMH [Record No. 127]; 07-349-JMH [Record No. 113]; 07-351-JMH [Record No. 46]; 07-352-JMH [Record No. 57]; 07-419-JMH [Record No. 90]; 08-17-JMH [Record No. 25]; 08-53-JMH [Record No. 115]; 08-74-JMH [Record No. 18];  08-79-JMH [Record No. 13]; 08-104-JMH [Record No. 19]; 08-109-JMH [Record No. 91]; 08-321-JMH [Record No. 39]; 08-418 [Record No. 12]] shall be, and the same hereby is, **DENIED**;

(2)  that the West Hills Plaintiffs shall **bear the reasonable cost** to GeoStar of copying and delivering the data to counsel for the West Hills Plaintiffs if they advise GeoStar that they wish to proceed as set forth below;

(3)  that on or before **February 12, 2009,** GeoStar Corporation

11

shall provide the West Hills Plaintiffs with a good-faith estimate of the reasonable cost of copying and delivering the data to counsel for the West Hills Plaintiffs;

(4) that on or before **February 17, 2009**, the West Hills Plaintiffs shall notify counsel for GeoStar whether it wishes for GeoStar to proceed to produce the data in its native format based on that cost estimate;

(5) that GeoStar shall, except as ordered below, **PRODUCE** the requested financial data in its native format to West Hills Farms on or before **March 4, 2009**; and

(6) that GeoStar shall be relieved of its obligation to timely produce this data in its native format to the West Hills Plaintiffs only if the West Hills Plaintiffs advise GeoStar that they do not wish to proceed with the production as set forth above.

This the 2nd day of February, 2009.

Signed By:

**James B. Todd**

**United States Magistrate Judge**

12